#28547-a-JMK
**2019 S.D. 31**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

LEROY L. JAMES, JR.,                                        Plaintiff and Appellee,

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,                                        Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA
\* \* \* \*
THE HONORABLE ROBERT A. MANDEL
Judge

\* \* \* \*

JOHN STANTON DORSEY
KIMBERLY PEHRSON of
Whiting, Hagg, Hagg, Dorsey
  & Hagg, LLP
Rapid City, South Dakota                                        Attorneys for plaintiff and
                                        appellee.


HILARY L. WILLIAMSON of
Fuller & Williamson, LLP
Sioux Falls, South Dakota                                        Attorneys for defendant and
                                        appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON OCTOBER 1, 2018
OPINION FILED **05/29/19**

#28547

KERN, Justice

[¶1.]        Melissa Rivers rear-ended LeRoy James Jr., causing him personal injury.  State Farm insured both parties.  Immediately following the accident, State Farm paid a portion of James's medical expenses under the medical payment provisions of his policy.  Acting on behalf of Rivers, State Farm then settled with James.  Once James released Rivers from liability, State Farm demanded James use his settlement proceeds to reimburse it for paying his medical expenses under his policy.  James sued for declaratory relief, arguing State Farm had no right to reimbursement or subrogation.  The circuit court denied State Farm's motion for summary judgment and entered a judgment in favor of James.  State Farm appeals. We affirm.

## Facts and Procedural History

[¶2.]        The automobile accident occurred on July 22, 2016, on Highway 16 near Rapid City.  At the time, State Farm insured both Rivers and James under separate auto insurance policies.  Rivers's policy provided $100,000 in liability coverage.  James's policy contained a $5,000 benefit for medical payments coverage.[1]  State Farm immediately paid $5,000 on James' behalf to medical services providers for treatment of James's injuries.

---

1.      James's medical payment coverage provision provides: "The Medical Payment Coverage limit is shown on the Declarations Page under 'Medical Payments Cover – Limit – Each person.'  This limit is the most *we* will pay for the ***medical expenses*** and funeral expenses combined, incurred by or on behalf of any one ***insured*** as a result of any one accident . . . ." (Emphasis in original.)

-1-

[¶3.] Ultimately, James settled his claim against Rivers. Rivers did not personally fund any of the settlement proceeds. Instead, State Farm paid James $43,000 on Rivers's behalf in exchange for a full and complete release from liability. After paying his attorney a one-third contingency fee plus costs and sales tax, James's net settlement was $19,927.54.

[¶4.] James's policy contained both a reimbursement clause and a subrogation clause. Following the settlement, State Farm demanded reimbursement from James for the $5,000 payment it made on James's behalf to cover medical expenses under the reimbursement clause. State Farm did not reduce its request to account for the attorney fees and costs James incurred to obtain his recovery from Rivers. James refused to reimburse State Farm for any amount; instead, he sued State Farm, seeking a declaratory judgment to determine his contractual rights under the policy. The parties filed cross-motions for summary judgment based on stipulated facts.

[¶5.] The circuit court concluded that State Farm could not subrogate against its own insured. It further held that the reimbursement clause was ambiguous. As a consequence, the court construed the policy against State Farm, the drafter, granting summary judgment to James. State Farm appeals, raising one issue and several sub-issues restated as follows:

> 1. Whether the language of the reimbursement clause is ambiguous.
>
> 2. Whether requiring James to reimburse State Farm implicates the anti-subrogation rule or offends public policy.
>
> 3. If State Farm is entitled to reimbursement, whether James is entitled to a portion of his attorney fees.

## Analysis and Decision

[¶6.]     "We review a circuit court's entry of summary judgment under the de novo standard of review." *Harvieux v. Progressive N. Ins. Co.*, 2018 S.D. 52, ¶ 9, 915 N.W.2d 697, 700.  When conducting this review, "[w]e give no deference to the circuit court's decision[.]" *Oxton v. Rudland*, 2017 S.D. 35, ¶ 12, 897 N.W.2d 356, 360.  "When reviewing a circuit court's grant of summary judgment, this Court only decides whether genuine issues of material fact exist and whether the law was correctly applied." *Ass Kickin Ranch, LLC v. N. Star Mut. Ins. Co.*, 2012 S.D. 73, ¶ 6, 822 N.W.2d 724, 726.  Here, there are no disputed facts, so our task is to determine whether the circuit court correctly applied the law.

[¶7.]     Each party filed briefs advising the circuit court of their interpretation of the policy.  James alleged that the reimbursement provision was ambiguous and should therefore be construed against its drafter, State Farm.  In response, State Farm argued the policy provided it with an unambiguous contractual right to reimbursement.  In addition to the question of ambiguity, the parties also disputed whether the anti-subrogation rule applied to the reimbursement provision in the policy.

[¶8.]     A brief explanation of these concepts is helpful to understand the arguments advanced by the parties both before the circuit court and in this appeal.  "[S]ubrogation is a time-honored theory [in which] insurers who pay a loss [for insureds] are entitled, within the limits of [the] subrogation doctrine, to pursue the actual wrongdoer." 16 Steven Plitt et al., *Couch on Insurance* § 222:4 (3d ed. Supp. 2018); *see also Am. Family Mut. Ins. Co. v. Auto-Owners Ins. Co.*, 2008 S.D. 106, ¶ 13, 757 N.W.2d 584, 588.  By subrogating a claim, the insurer is allowed to stand in

the shoes of the insured to sue the tortfeasor to recover the payments it made. One

limitation to the doctrine of subrogation, however, is the anti-subrogation rule, a

defense that prohibits insurers from suing their own insureds to recover a loss. *See*

Plitt, *supra* § 224:3. Even though the anti-subrogation rule is widely recognized,

courts take varying approaches when applying the rule.[2]

[¶9.]    Reimbursement, on the other hand, often differs factually from

subrogation because rather than seeking recovery from a third party, it allows "the

insurer to recover policy payments directly from its own insured or beneficiary upon

that party's recovery of the same loss from a third party . . . ." *Id.* at § 222:81.

Therefore, although the mechanisms of recovery are different, "the effect of

subrogation and reimbursement are essentially the same." *Id.*

[¶10.]    James relied upon subrogation principles to argue State Farm was not

entitled to recovery under either the reimbursement or subrogation provisions

based on the anti-subrogation rule. Even though the rule is generally applicable

only to subrogation claims, James contended the language and effect of the

provisions were similar enough to apply the principal of anti-subrogation to the

---

2.    Some courts have held that the rule applies only when co-insureds share insurance coverage under a single policy. *See, e.g.*, *Benge v. State Farm Mut. Auto. Ins. Co.*, 697 N.E.2d 914, 918 (Ill. App. Ct. 1998). Other jurisdictions expand the rule's application to any situation when the same insurance company covers both insureds, even if the parties have separate, unrelated policies. *See, e.g.*, *Control Specialists Co. v. State Farm. Mut. Auto. Ins. Co.*, 423 N.W.2d 775, 776–77 (Neb. 1988).

reimbursement clause. This is because permitting reimbursement, according to James, would allow State Farm to recover against James, its own insured.[3]

[¶11.] In response, State Farm argued that: (1) it was exercising an unambiguous contractual right of reimbursement completely distinct from instituting a subrogation action; (2) even if subrogation principles applied to its request for reimbursement, the anti-subrogation rule did not preclude State Farm's rights because the rule applied only to co-insureds under a single insurance policy; and (3) enforcing the reimbursement clause did not offend public policy.

[¶12.] Because it is dispositive of the issues in this case, we address only the question of whether the language of the reimbursement clause was ambiguous. "Insurance contract interpretation is a question of law reviewed de novo." *W. Nat'l Mut. Ins. Co. v. Decker*, 2010 S.D. 93, ¶ 10, 791 N.W.2d 799, 802. We construe the language of an insurance contract "according to its plain and ordinary meaning . . . ." *St. Paul Fire & Marine Ins. Co. v. Schilling*, 520 N.W.2d 884, 887 (S.D. 1994). Ambiguity exists "when application of rules of interpretation leave a

---

3. Our survey of the case law reveals an emerging trend concerning the parameters of an insurer's right to reimbursement from an insured. The vast majority of jurisdictions, including the Eighth Circuit Court of Appeals, have recognized reimbursement as a separate right from subrogation. *See, e.g.*, *McIntosh v. Pac. Holding Co.*, 992 F.2d 882, 884 (8th Cir. 1993). But at least three states—Nebraska, New York, and Texas—have directly rejected attempts by insurance companies to disguise subrogation as reimbursement in order to overcome the effects of a waiver or the anti-subrogation rule. *See Wausau Underwriters Ins. Co. v. Wedel*, 518 S.W.3d 615, 622 (Tex. App. 2017) (analyzing a statutory rather than a common-law right); *Cont'l W. Ins. Co. v. Swartzendruber*, 570 N.W.2d 708, 711 (Neb. 1997); *N.Y.C. Dep't of Transp. v. Petric & Assocs.*, 19 N.Y.S.3d 48, 48 (N.Y. App. Div. 2015). Because our resolution of this case hinges on the question of ambiguity we express no opinion on this issue.

genuine uncertainty as to which of two or more meanings is correct." *Alverson v. Nw. Nat'l Cas. Co.*, 1997 S.D. 9, ¶ 8, 559 N.W.2d 234, 235.

[¶13.] But mere disagreement as to which interpretation is correct is not sufficient to create ambiguity. "Rather, a contract is ambiguous only when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Coffey v. Coffey*, 2016 S.D. 96, ¶ 9, 888 N.W.2d 805, 809. "[A]ny uncertainty or ambiguity in a contract of insurance [is to] be construed most strongly against the insurer and in favor of the insured." *Wilson v. Allstate Ins. Co.*, 85 S.D. 553, 557, 186 N.W.2d 879, 881 (S.D. 1971).

[¶14.] State Farm claims that the circuit court erred by finding the provisions of the reimbursement clause ambiguous. The relevant portion of James's insurance policy provides:

> **12. Our Right to Recover Our Payments**
>
> \* \* \* \* \*
>
> **b. Reimbursement**
> If *we* make payment under this policy and the ***person*** or organization to or for whom *we* make payment recovers or has recovered from another ***person*** or organization, then:
>
> > (1) *we* are entitled, upon payment, to an assignment of any cause of action, or judgment obtained against such other ***person*** or organization and
> >
> > (2) the ***person*** or organization to or for whom we make payment must:
> >
> > > (a) Hold in trust for *us* the proceeds of any recovery; and
> > >
> > > (b) Reimburse *us* to the extent of *our* payment; with no reduction taken for attorney fees incurred in obtaining a settlement from a judgment against such other ***person*** or organization.

(Emphasis in original.) In analyzing the terms of the reimbursement clause, *person* is defined within the policy as "a human being," but *organization* is left without a definition.

[¶15.] The parties dispute focuses on the meaning of "recovers or has recovered from another *person* or organization." State Farm's highlighted reference to itself using the first-person pronouns "we," "us" and "our" establishes it cannot be considered to be "another . . . organization." Therefore, we must next determine whether the phrase "recovers or has recovered from another *person*" is ambiguous.

[¶16.] State Farm argues the phrase recovery from "another *person*" includes *any* other person, even other individuals who also hold State Farm insurance policies. In its view, this language unambiguously includes Rivers, who is "another *person*" from James, even if State Farm funded the settlement on Rivers's behalf. In response, James argues the policy is ambiguous because it could also be interpreted to require reimbursement only when the insured recovers from *another* person or organization, but not another insured by State Farm. He contends that, here, there is no other "*person* or organization"—there is only State Farm.

[¶17.] From our review, there are two equally reasonable interpretations of the reimbursement provision when viewed objectively in the context of the entire agreement. *See Alverson*, 1997 S.D. 9, ¶ 8, 559 N.W.2d at 235. James had a legal claim against Rivers, but his actual recovery came from settlement proceeds State Farm paid pursuant to its policy with Rivers. Therefore, the language could be interpreted to mean State Farm has a right to reimbursement because James

recovered from Rivers, who is "another ***person***." But James recouped his financial loss following the accident from State Farm's pocket, not "*another* person or organization." Therefore, the language could also be interpreted to mean James recovered from State Farm, the party who paid James. Based on the uncertainty regarding the term 'recovery,' we conclude the text of the reimbursement provision is ambiguous.[4]

[¶18.]     Because ambiguity "is to be construed *most strongly* against the insurer and in favor of the insured," *see Wilson*, 85 S.D. at 558, 186 N.W.2d at 881 (emphasis added), we conclude that the language "another ***person*** or organization" in the reimbursement provision does not include State Farm or any of its insureds. Thus, State Farm has no contractual right to reimbursement for the $5,000 paid to James for medical expenses under the policy. We affirm.

[¶19.]     GILBERTSON, Chief Justice, and JENSEN and SALTER, Justices, concur.

---

4.     Indeed, to avoid this ambiguity State Farm could have specified that "another ***person*** or organization" could include both another person that State Farm insured or State Farm, itself, or simply allowed reimbursement where an insured recovers from another person *or his insurer*.